No. 40,158

In the Matter of the Estate of C. Lester Case, Deceased. (Also known as Lester Case or Charles Lester Case.) FANNIE CUSHING, *Appellant*, v. HARRY DUNLAP, Administrator, THE STATE OF KANSAS, HARRY L. GIBSON and RALPH WILLIAM GIBSON, *Appellees.*

(299 P. 2d 589)

Opinion filed June 30, 1956.

G. E. Pees, of Iola, argued the cause, and *Frank W. Taylor,* of Iola, was with him on the briefs for the appellant.

*J. D. Conderman,* and *Guy Lamer,* both of Iola, argued the cause and were on the briefs for Harry L. Gibson and Ralph William Gibson, and Harry Dunlap, administrator, appellees.

*John Faust,* county attorney, and *Kenneth H. Faust,* special assistant attorney general, of Iola, represented the State of Kansas, appellee.

*J. C. Edwards,* of Iola, as *amicus curiae.*

The opinion of the court was delivered by

Parker, J.:  Lester Case, a bachelor, who had been a resident of Kansas for most, if not all, of his life died intestate, a resident of Allen County, Kansas, on February 24, 1955, at the age of seventy-nine, leaving real and personal property.  Within a few days after his death one of his creditors, as the probate code of this state permits (see G. S. 1949, 59-2221; *In re Estate of Brasfield,* 168 Kan. 376, 214 P. 2d 305), filed a petition in the probate court of Allen County asking for the appointment of an administrator for his estate and alleging that his heirs were unknown to the petitioner. Thereafter Harry Dunlap was duly appointed and qualified as administrator of such estate.

Approximately seven months after the appointment of the administrator, and while the estate was in the course of administration, Fannie Cushing, a woman then more than fifty-nine years of age, filed an unverified petition in probate court.  In that pleading she alleged in substance that she was the illegitimate daughter of the decedent; that he had notoriously and in writing acknowledged her as his child; that in a bastardy proceeding (instituted by her mother on August 10, 1895), in a Justice of the Peace Court of Lone Elm Township, Anderson County, Kansas, Lester Case, who was then and there charged as being her father, acknowledged his paternity of the petitioner; that there was a general rumor and understanding among the neighbors and friends of Lester Case and petitioner's mother that Lester was her father; and prayed that the court adjudge her to be the heir of such decedent and, as his illegitimate daughter and child, entitled to his estate.  The third

day after this petition was filed a hearing was held thereon at which petitioner only adduced evidence. At its conclusion the probate court found the allegations of such pleading were true and granted petitioner the relief prayed for. Subsequently the attorney general appeared on behalf of the State of Kansas and moved to set aside this decision on grounds the state had not been made a party to the proceeding and hence, since it had received no notice of the hearing, had not been present. When this motion was overruled it immediately gave notice and took the case to the district court on appeal.

In district court petitioner promptly moved to dismiss the appeal on grounds which, in a general way, can be stated as charging the state had no interest in the proceeding and hence was not a *person aggrieved*, within the meaning of that term as used in the statute (G. S. 1949, 59-2404). Some two months later Harry L. Gibson and Ralph William Gibson filed an application for leave to interevene in district court, stating they were heirs of the decedent and entitled to file written defenses to the claims made by Fannie Cushing as an heir of the estate. Shortly thereafter the trial court overruled the motion to dismiss the appeal and sustained the application for intervention. In this connection it is interesting to note that the trial court's journal entry respecting the disposition of these matters, which for all purposes here involved must be accepted as true, contains a recital that on the hearing thereof all parties (petitioner, the state, and the applicants for intervention) stipulated that the petitioner's motion to dismiss the appeal should be overruled; also that during the same hearing petitioner made application for and was granted permission to verify her petition.

Following the foregoing action the intervenors filed their written defenses to petitioner's claim wherein they denied generally each and all of its allegations and, among other things, alleged that they were heirs at law of the decedent (Lester Case) and that if petitioner was his illegitimate daughter, which they specifically denied, he never notoriously recognized paternity of her as his daughter and that for that reason she was not entitled to inherit from him or participate as an heir in the distribution of his estate. The record discloses, although it is not abstracted and we have no way of knowing its contents, that petitioner thereafter filed another motion to dismiss the appeal which was overruled by the trial court. It further discloses that the cause then came on for trial *de novo*

upon the merits of the petitioner's claim; that evidence was introduced by the petitioner and the intervenors; and that after taking the case under advisement the trial court ultimately made the following finding of fact and conclusions of law:

### "FINDING OF FACT

"The decedent, C. Lester Case, in his life time did not notoriously, or in writing, recognize the paternity of the petitioner-appellee, Fannie Cushing.

### "CONCLUSIONS OF LAW

"1. The docket of the Justice of the Peace of Lone Elm Township, Anderson County, Kansas, and the entries therein in the case of State of Kansas ex rel vs. Charles Lester Case, (Petitioner's Exhibit A) are admissible in evidence and are considered by the Court.

"2. The recitals and entries of Petitioner's Exhibit A do not constitute a recognition in writing by C. Lester Case of the paternity of the petitioner.

"3. The recitals and entries of Petitioner's Exhibit A do not constitute a determination by the court of the question of paternity.

"4. The payment by the decedent, C. Lester Case, of a sum of money to settle the claim against him in the bastardy proceedings as shown in Petitioner's Exhibit A is not an admission by him of his paternity of the petitioner, but even if so considered it is not, together with all the other evidence in the case, sufficient to move the court to make a finding of notorious recognition.

"5. Fannie Cushing is not the child of the decedent within the meaning of Section 59-501 General Statutes of Kansas, 1949 and is not entitled to inherit as his heir."

And then rendered judgment in accord with its finding and conclusions.

After rendition of the judgment petitioner filed a motion for a new trial. When it was overruled she perfected the instant appeal.

Pertinent provisions of the statute G. S. 1949, 59-501, relating to intestate succession on which the trial court based its judgment, read:

"As used in this article, the word 'children' . . . includes illegitimate children . . . when applied to father and child where the father has notoriously or in writing recognized his paternity of the child, or his paternity thereof has been determined in his lifetime in any action or proceeding involving that question in a court of competent jurisdiction. . . ."

Appellant first contends the trial court erred in overruling her motion to dismiss the appeal. This contention lacks merit and cannot be upheld. Heretofore we have pointed out that appellant herself stipulated in open court that her first motion to dismiss the appeal should be overruled. Having so stipulated she cannot now be heard to say there was error in that ruling. The second motion is not abstracted and we have no means of knowing what the court

passed upon in overruling it. In that situation we are compelled to hold appellant has failed to make it affirmatively appear the trial court's action in that respect was erroneous. In leaving this point it should perhaps be stated that even if both motions were here we would have no difficulty, on the basis of arguments advanced by appellant as grounds for dismissal of the appeal, in concluding they were properly overruled. The petition for administration states that the heirs of the estate were unknown. The statute dealing with the estates of intestates without heirs (G. S. 1949, 59-905) provides that the state shall be a party to all such proceedings. Another section (G. S. 1949, 59-2222) specifies that when a petition for administration is filed notice of the hearing thereof shall be given pursuant to section 59-2209 unless the court shall make an order to the contrary and that when the state is a proper party the notice shall be served upon the attorney general and the county attorney of the county. No one contends that any such notice was given. The statute pertaining to appeals (G. S. 1949, 59-2404) from probate court orders provides that any *person aggrieved* may appeal within thirty days from the rendition of any appealable order. G. S. 1949, 59-2401(15) provides that a decree determining the heirs of an estate is an appealable order. In the face of the foregoing statutes and facts as related, we believe the state was a party aggrieved, within the meaning of that term as used in 59-2404, *supra,* and no one contends its appeal was out of time. Hence the trial court committed no error in overruling the involved motions.

In passing we note appellant challenges the conclusion last announced on the premise that, since other heirs had appeared in the case the state was no longer entitled to maintain its appeal. Only this month (see *Bortzfield v. Sutton,* 180 Kan. 46, 299 P. 2d 584 [decided June 30, 1956]) we had occasion to hold that the right of appeal is not determined by whether the appealing party is right in his position.

The next error assigned is that the trial court erred in adjudging that appellant was not the child of decedent (Lester Case), within the meaning of that term as used in 59-501, *supra,* and was not entitled to inherit as his heir. The principal argument made on this point is that under all the evidence there was a general report, rumor and understanding among the neighbors and friends of Lester Case that he was the father of the illegitimate child of appellant's mother; and that none of such witnesses ever knew of such

report being denied by any of the Case family or any one for them. The short and simple answer to this argument is to be found in our recent decision of *Meyer v. Rogers*, 173 Kan. 124, 244 P. 2d 1169, where it is said:

"Defendants vigorously contend the most that can be said for all of this evidence is that it amounts to nothing more than 'tongue-wagging gossip,' and they rely upon language contained in the dissenting opinion in the case of *Smith v. Smith*, 105 Kan. 294 (302), 182 Pac. 538, in which it was said that it must not be forgotten that what the statute deals with is not notoriety of paternity but notoriety of recognition of the child by the father—the one person who, under the statute, could confer heirship." (p. 129.)

In connection with sufficiency of the evidence to sustain the trial court's single factual finding we are not disposed to here labor the record or detail the sordid story disclosed by the testimony. It suffices to say that after carefully reviewing all the evidence presented on the subject of notoriety of recognition of paternity by Lester Case the most that can be said for the evidence is that one very aged witness, in an uncertain and confusing manner, testified that on one or perhaps two occasions he had talked with Lester Case in their school days at a time when the latter admitted having had a child but even this witness did not pretend to go so far as to say appellant's name was mentioned as being the child in question or that her mother's name was referred to in those conversations. This evidence, in our opinion, fell far short of establishing that Lester Case had notoriously or in writing recognized his paternity of the appellant.

In and of itself what has just been stated is enough to dispose of this phase of the case. However, we are not inclined to let the matter stand entirely on that basis. Assuming *arguendo* that the testimony of the witness to which we have last referred is entitled to be regarded as some evidence of notorious recognition of appellant being Lester Case's daughter all other evidence on that point was either conflicting or contradictory and the trial court, which had that duty and the opportunity to see and observe all witnesses, found against appellant on such factual issue. In that situation, under universal decisions of this jurisdiction (see, *e. g.,* Hatcher's Kansas Digest [Rev. Ed.], Appeal &. Error § 507; West's Kansas Digest, Appeal & Error § 1010 [1]), the rule is that factual findings made by a trial court supported by substantial competent evidence are conclusive between the parties and will not be disturbed on appellate review.

Finally it is contended that appellant's Exhibit A, the August 10, 1895, bastardy proceeding (apparently admitted in evidence without objection on the part of appellees) constitutes a judicial determination in his lifetime of Lester Case's paternity of appellant and that therefore the trial court erred in its conclusion of law No. 5 wherein it held that she was not the child of such decedent within the meaning of 59-501, *supra*. In general it may be stated this Exhibit discloses that appellant's mother did institute a bastardy proceeding against Lester Case, that he was brought into court pursuant to a warrant, and that he entered into a recognizance with his father as security to appear on August 19, 1895, before the Justice of the Peace having jurisdiction of that proceeding. So far as pertinent for our purposes we note such Exhibit contains the following statement:

"On or about Aug 13th at the earnest request of both defendant (Lester Case) and plaintiff (Mother of appellant) the case was compromised by the payment to plaintiff her own price of $50.00.

"Whereupon said plaintiff entered into an agreement to stay all further and any future proceedings against said Charles Lester Case. Defendant paying all costs of action."

Careful analysis of the language just quoted, on which appellant relies to sustain her position with respect to the point now under consideration, simply does not warrant a construction, as she contends, that there was any judicial determination whatsoever of paternity in the above mentioned bastardy proceeding. In fact the mere reading of such language compels a different and contrary conclusion, *i. e.*, that instead of acknowledging paternity Lester Case purchased his peace and compromised the claim made against him in that proceeding by the payment of $50.00. Since the foregoing record contains no admission or acknowledgment of paternity and, absent such an admission or acknowledgment, we are cited to and know of no decisions permitting what was obviously a compromise settlement to be expanded into a judicial determination of paternity in a bastardy proceeding we are constrained to hold appellant's position respecting the force and effect to be given the Exhibit in question cannot be upheld. For decisions supporting this conclusion see *Campbell v. Carroll*, 71 Ind. App. 587, 124 N. E. 407; *In re Beekman's Estate*, 160 Wash. 669, 295 Pac. 942, and cases there cited.

The judgment is affirmed.

FATZER, J., not participating.