No. 41,119

In re Estate of Nellie M. Cramer, Deceased. (OTTO J. KOERNER, Administrator *De Bonis Non Cum Testamento Annexo* of the Estate of Nellie M. Cramer, Deceased, *Appellant,* v. THE DIVISION OF NATIONAL MISSIONS OF THE BOARD OF MISSIONS OF THE METHODIST CHURCH and THE DIVISION OF WORLD MISSIONS OF THE BOARD OF MISSIONS OF THE METHODIST CHURCH, *Appellees.*)

(332 P. 2d 554)

Opinion filed December 6, 1958.

*Morris H. Cundiff,* of Wichita, argued the cause, and *Dale M. Bryant, Garner E. Shriver, Glenn J. Shanahan,* and *Orlin L. Wagner,* all of Wichita, were with him on the briefs for the appellant.

*W. Jay Esco,* of Wichita, argued the cause, and *Lloyd F. Cooper, Dale H. Cooper,* and *Ralph B. Foster,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: In a proceeding commenced to probate the will of a testatrix the probate court, in its journal entry of final settlement, allowed fees to the administrator for his services and for the services of his attorney. Appeal was taken therefrom to the district court by the present appellees and that court modified and substantially reduced such fees, from which order the administrator perfected this appeal.

A question vital herein relates to the jurisdiction of the trial court on the appeal from the probate court and in determining that question we must keep in mind the following salient portions of the record.

The will of Nellie Cramer dated March 10, 1953, contains two paragraphs pertinent to the questions before us. They read:

"SECOND: I hereby give, devise and bequeath all the rest and residue of my property of every kind and character, and wherever situated, unto my brother, Fred S. Cramer, absolutely and in fee simple.

"THIRD. In the event of the death of my brother, Fred S. Cramer, prior' to my death, or in the event of the death of my said brother and myself at or about the same time as a result of the same accident or casualty, then and in any of said events, I hereby give, bequeath and devise all of my property, both real and personal to the Division of Foreign Missions and Division of Home Missions and Church Extension of The Methodist Church."

On May 13, 1954, Nellie died leaving an estate consisting of some personal property and a one-half interest in six parcels of real property in the city of Wichita. At the time of Nellie's death, her brother Fred S. Cramer, in his own right owned the other one-half interest in those same parcels.

Fred survived Nellie and on November 24, 1954, he was appointed and qualified as executor of her estate. Morris H. Cundiff was appointed and acted as attorney for Nellie's estate and for the executor thereof. In February, 1955, Otto J. Koerner, appellant, was appointed guardian for the estate of Fred S. Cramer, then an incompetent person, and in his search to determine the ownership of the properties in Fred's estate, he learned of Nellie's one-half interest in the real property in which Fred owned the other one-half interest. He also learned that Morris Cundiff was attorney for Fred as executor of Nellie's estate. Koerner contacted Cundiff and Fred was thereafter removed as executor of Nellie's estate. (It should be noted that while Koerner and Cundiff are both attorneys at law they are not associated in the practice.) On March 22, 1955, Koerner was appointed and qualified as administrator *de bonis non cum testamento annexo* with a bond of $10,000.

The Division of Foreign Missions and Division of Home Missions and Church Extension of The Methodist Church, as specifically named in the will, notified Koerner by letter on January 25, 1956, that service of all proceedings requiring notice was to be made on their counsel. No showing of any change in identification of the religious corporations was made by pleading or proof.

In order to pay some fees, bills, and expenses in the administration of Nellie's estate, the probate court ordered two of the properties sold, which left four remaining parcels of real property. On June 10, 1955, Fred died and Koerner was appointed administrator *cum testamento annexo* of his estate.

On February 25, 1957, in its order for partial distribution, the probate court directed Koerner, as administrator of Nellie's estate, to deliver the four remaining parcels of real property to Koerner, as administrator of Fred's estate. Again the Division of Foreign Missions and Division of Home Missions and Church Extension of the Methodist Church as described in Nellie's will, waived service of notice, entered their appearances, and approved the order for partial distribution.

On June 17, 1957, the probate court entered its journal entry of final settlement in Nellie's estate and therein made the following pertinent findings:

"The court further finds that the names and residences of the heirs, devisees and legatees who are entitled to the estate under the said will are as follows:

"Fred S. Cramer, her brother, now deceased, but living at the time of the death of this decedent, and now vested in the estate of Fred S. Cramer, deceased, being administered by Otto J. Koerner, administrator cum testamento annexo.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The court further finds that under the will of Nellie M. Cramer, deceased, Fred S. Cramer is the devisee and legatee of all of the residue of the estate, real and personal."

The probate court ordered the four remaining parcels of realty and all other property transferred to Koerner as administrator of Fred's estate. In addition to allowance of appraisers' fees, publication and court costs, Koerner, as administrator of Nellie's estate, was allowed $4,500 as his fee together with a $1,500 fee for his attorney, Morris Cundiff. This journal entry was approved by counsel for the "Division of Foreign Missions and Division of Home Missions and Church Extension of the Methodist Church" which is the same identity that appeared in Nellie's will.

A notice of appeal from the allowance to the administrator of a fee of $4,500 and an attorney's fee of $1,500 by the probate court's journal entry was filed by "The Division of National Missions of the Board of Missions of the Methodist Church," and "The Division of World Missions of the Board of Missions of the Methodist Church," which is the first appearance of these identities with no showing in the record as to who these parties were.

By stipulation the record of the probate court proceedings in Nellie's estate was introduced into the record of the trial on appeal in the district court and the evidence of Koerner, together with that of several other witnesses, regarding the services of Koerner and his attorney and the reasonableness of fees for those services, was introduced. At the conclusion of the trial in the district court, suggested findings of fact and conclusions of law were submitted by each party and the trial court entered its journal entry containing these pertinent findings of fact:

"4. That the Division of Foreign Missions referred to in paragraph numbered Third in the last will and testament of Nellie M. Cramer, is one and the same as 'Board of Foreign Missions of the Methodist Church, whose name has now been changed to Division of World Missions of the Board of Missions of the Methodist Church,' and that Division of Home Missions and Church Extension of the Methodist Church is one and the same as 'Division of Home Missions and Church Extension of the Methodist Church, whose name is now

changed to Division of National Missions of the Board of Missions of the Methodist Church.

. . . . . . . . . . . . . .

"12. That the residuary legatees and devisees, Division of World Missions of the Board of Missions of the Methodist Church and Division of National Missions of the Board of Missions of the Methodist Church filed a petition on the 13th day of February, 1957, in the Probate Court of Sedgwick County, Kansas, requested the administrator d. b. n. c. t. a. to show cause why said estate should not be closed. That said petition was set to be heard on the 25th day of February, 1957.

"13. That order of partial distribution, dated the 25th day of February, 1957, was entered in said estate, assigning all of the real estate which remained in the estate as of said date to Division of National Missions of the Board of Missions of the Methodist Church and Division of World Missions of the Board of Missions of the Methodist Church.

. . . . . . . . . . . . . .

"16. That an appeal from the award of administrator fee and attorney fee of the probate court of Sedgwick County, Kansas, entered on the 27th day of June, 1957, was perfected to the District Court of Sedgwick County, Kansas.

"17. That the just and reasonable value of the services of the administrator d. b. n. c. t. a. of the estate of Nellie M. Cramer, deceased, is an amount in the sum of $950.00.

"18. That a just and reasonable fee for the services of Morris M. Cundiff, as attorney for Otto J. Koerner, administrator, d. b. n. c. t. a. is an amount in the sum of $950.00, and that said administrator should be allowed said amount as and for attorney fees for said attorney."

Conclusion of law No. 1 reads:

"The Court has jurisdiction over the parties and the subject matter in this cause of action."

Koerner filed motions for new trial and to strike the trial court's findings of fact and conclusions of law, which were overruled. Koerner then perfected his timely appeal from the trial court's findings and conclusions, orders, decisions, and judgments and from the orders overruling motions to strike and for new trial, and, in addition, the record before us indicates that Koerner certified that,

". . . there is no evidence offered or admitted in the Probate Court, or in the District Court in the trial of the appeal from the Probate Court, that the appellants (appellees herein), namely; *The Division of National Missions of the Board of Missions of the Methodist Church* and *The Division of World Missions of the Board of Missions of the Methodist Church,* were or are one and the same, or identical with, *Division of Foreign Missions and Division of Home Missions* and *Church Extension of the Methodist Church* as named in the Last Will and Testament of Nellie M. Cramer, deceased, or in the Last Will and Testament of Fred S. Cramer, deceased, as determined by the Probate Court to be the legatees and devisees of Fred S. Cramer, deceased, under the provisions of his Last Will and Testament."

The foregoing certification was not denied, modified, or qualified in any manner by appellees herein. (We are not determining in this opinion any part of the appeal in case No. 41,120, *In re Estate of Cramer*, 183 Kan. 816, 332 P. 2d 560, this day decided.)

On appeal in this court appellees for the first time attach four private statutes of the state of New York which disclose the change of the corporate names and identities of the Division of Foreign Missions and Division of Home Missions and Church Extension of The Methodist Church, as described in Nellie's will, to that of the corporate names and identities as they appeared in the notice of appeal from the probate court to the district court and as they appeared in the appeal to this court.

Our first concern is whether the record shows that the parties seeking to appeal from the probate court's order of final settlement in Nellie's estate were proper parties for that purpose. Appellees contend that they were aggrieved persons and as such were proper parties while Koerner claims that nothing was pleaded or proved to establish their identities so that they could come within the category of aggrieved persons.

The applicable provision of our probate code (G. S. 1949, 59-2404) in part reads:

"Such appeal may be taken by any person aggrieved within thirty days after the making of such order, judgment, decree, or decision: *Provided,* . . . The right of appeal shall not be denied nor abridged for failure of the party appealing to present his defenses in the probate court or to appear therein."

Koerner cites *In re Estate of Johnson*, 164 Kan. 45, 187 P. 2d 376, where Alice Knight Kirkpatrick, daughter by a former marriage of Sarah A. Johnson, the widow of a deceased testator, who named his widow as a beneficiary in his will, attempted an appeal from the probate court to the district court from the order of final settlement of the testator's estate. At the time of the attempted appeal Sarah A. Johnson had died, but her will making Alice a beneficiary therein had not been offered for probate nor had a personal representative been appointed. Since Alice was not entitled to object to the order of final settlement of testator's estate in the probate court and therefore she was not entitled to appeal from such order to the district court, it can readily be seen Alice was not a proper party to take the appeal as an aggrieved person, or otherwise, and rules of law applicable there are not applicable here.

On the other hand, appellees call our attention to *In re Estate of James*, 168 Kan. 165, 211 P. 2d 123, where, upon the death of the

executor named in testator's will, a dispute arose between heirs at law or next of kin of the testator and the legatees under his will over the appointment of a successor administrator *de bonis non cum testamento annexo*. As was substantially held in that case, such parties were interested and aggrieved persons. Another case is *In re Estate of Demoret*, 169 Kan. 171, 218 P. 2d 225. There an appeal by the executor from the probate court to the district court was dismissed on jurisdictional grounds because proper notice required by G. S. 1949, 59-2405 had not been given. Part of the testatrix's property sought to be inventoried, as here, was determined by the probate court to be trust property. It would be impossible to say that the executor under those circumstances was not an aggrieved person. Appellees also cite *In re Estate of Case*, 180 Kan. 53, 299 P. 2d 589, wherein the state of Kansas petitioned for administration of the estate of a deceased intestate alleging that such intestate bachelor left an estate but his heirs were unknown, or that he had no known heirs, and that the state of Kansas was a person aggrieved when a decision adverse to its interests was rendered. That case, while interesting, is neither analogous to nor conclusive of our case. We have no trouble in agreeing with the proposition that in these three instances the appealing parties were "persons aggrieved."

Koerner raises a very germane element when he argues that the appellees here neither pleaded nor proved their identities (*Memorial Home v. Collins Estate*, 97 Kan. 87, 88, 154 Pac. 274) so as to establish themselves as "persons aggrieved" and to determine that feature we must turn to our controlling statutes and decisions. G. S. 1949, 60-2878 provides:

"Every court of this state shall take judicial notice of the common law and statutes of every state, territory, and other jurisdiction of the United States."

G. S. 1949, 60-2880 provides:

"The determination of such laws shall be made by the court . . . and shall be reviewable."

G. S. 1949, 60-744 provides:

"In pleading a private statute, or a right derived therefrom, it shall be sufficient to refer to such statute by its title, and the day of its approval, and the court shall thereupon take judicial notice thereof."

In *A. T. & Santa Fe Rld. Co. v. Blackshire*, 10 Kan. 477, the court held:

"Courts do not take judicial notice of a private act of the legislature. It must be proved or pleaded, or no attention will be paid to its existence." (Syl. ¶ 2.)

In the same opinion the court stated:

"It is sufficient . . . to say that the act incorporating the A. T. & S. F. Rld. Co. is a private act, and, as it was neither pleaded nor proved the court was under no obligation to notice its existence, or refer to its provisions. Courts take judicial notice of the public statutes of their own state, and these need to be neither pleaded nor proved. But the rule is otherwise with the private laws. They are matters of proof. In pleading them, or a right derived from them, it is sufficient under the code to refer to them by their title and the dates of their approval, and thereupon the courts take judicial notice of them: Code § 124. Nothing of this kind was done in this case." (p. 487.)

The above case is still the law in respect to our courts taking judicial notice of the private statutes of Kansas and it would be unwise and injudicious to say that courts of Kansas must take judicial notice of private acts of other jurisdictions, irrespective of whether they are pleaded or proved by reference to such statutes by title and the dates of their approval, and in the same breath say that Kansas courts cannot consider such private statutes of Kansas unless they are so pleaded or proved. This would lead to unlimited confusion and indefiniteness in titles of real property in the state of Kansas.

In view of Koerner's certificate as to appellees' failure to offer proof of their identities, previously set out herein, they could not be *persons aggrieved* whereby they could maintain their attempted appeal from the probate court to the district court. Neither the record in the probate court nor the record in the district court makes it possible to determine who the appellees were or what their position was at any time during the proceedings in those courts. As a result and because of their failure in the district court to sustain the required burden to establish affirmatively by competent proof their identities and interests in the estate so as to constitute them persons aggrieved within the meaning of G. S. 1949, 59-2404, and where they rely upon private statutes of New York which were neither pleaded nor proved and there is nothing in the record to show their identities or interests, they were not persons aggrieved and were not entitled to maintain the appeal. The district court obtained no jurisdiction of the purported appeal and it should have been dismissed.

Appellees have not helped themselves by presenting the private

acts of the state of New York for the first time in the appeal to this court because we do not consider matters which have not previously been presented to the trial court. (*Emerson v. Peters,* 110 Kan. 87, 202 Pac. 601.)

The judgment of the trial court is reversed with directions to dismiss the appeal from the probate court.