No. 49,128

CLARA E. ASLIN, *Appellant,* v. DAVID E. SEAMON and MARJORIE P. SEAMON, *Appellees.*

(587 P.2d 875)

Opinion filed December 9, 1978.

*Henry W. Green,* of Leavenworth, argued the cause and was on the brief for the appellant.

*Patrick J. Reardon,* of Leavenworth, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is a review of the judgment of the Court of Appeals entered in *Aslin v. Seamon,* 2 Kan. App. 2d 265, 578 P.2d 277 (1978).

The facts of this case are fully stated in the Court of Appeals opinion written by the Honorable Marvin W. Meyer. The Court of Appeals held: (1) under the peculiar circumstances of the case the trial court erred in finding the appellant had failed to assume her duties as a parent for two years pursuant to K.S.A. 59-2102(3); and (2) the trial court lacked jurisdiction because in the absence of a judicial determination of paternity, the father of an illegitimate child cannot give his consent to adoption.

On appeal to this court the adoptive parents claim the Court of Appeals erred in substituting its judgment for that of the trier of facts; in holding the unadjudicated natural father of an illegitimate child is not a "parent" under K.S.A. 59-2102(3); and in

ordering an immediate return of the minor children to their mother.

The record reflects the testimony was conflicting in this case. The trial court found William Thompson was the natural father of Linda and Tina Foster and had consented to their adoption, and the natural mother, Clara Foster Aslin, had failed to assume her duties as a "parent" for two consecutive years preceding the filing of the adoption petition. It granted David and Marjorie Seamon custody of the children because parental obligation required more than Clara Aslin's "sporadic attempts at having a child returned." The Seamons claim, in awarding Clara Aslin custody of her two children, the Court of Appeals made new findings of fact and substituted its judgment for that of the trial court. We agree.

Ordinarily the question whether or not an individual has failed or refused to assume the duties of a parent for the required period of time is a factual one to be determined by the trier of facts upon competent evidence after a full and complete hearing. *In re Herbst,* 217 Kan. 164, 535 P.2d 437 (1975); *In re Sharp,* 197 Kan. 502, Syl. ¶ 5, 419 P.2d 812 (1966); *In re Waters,* 195 Kan. 614, Syl. ¶ 1, 408 P.2d 590 (1965). When findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, the duty of the appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the findings. An appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances the reviewing court must review the evidence in the light most favorable to the party prevailing below. *Craig v. Hamilton,* 221 Kan. 311, 313, 559 P.2d 796 (1977) and cases cited therein.

Despite these well-established rules the Court of Appeals did reweigh the evidence and nullify the trial court's belief of the evidence. Although the testimony is conflicting in this case, substantial competent evidence exists to support the trial court's findings.

The Seamons next assert the Court of Appeals erred in holding an unadjudicated natural father does not have authority under the laws of the State of Kansas to place a child for adoption because in the absence of a judicial determination of paternity, he is not a "parent" pursuant to K.S.A. 59-2102(3).

K.S.A. 59-2102 provides in part:

"Before any minor child is adopted, consent must be given to such adoption:
"(1) by the living parents of a legitimate child or
"(2) by the mother of an illegitimate child or
"(3) by one of the parents if the other has failed or refused to assume the duties of a parent for two (2) consecutive years or is incapable of giving such consent or . . . ."

In the case of *In re Lathrop,* 2 Kan. App. 2d 90, Syl. ¶ 5, 575 P.2d 894 (1978), the Court of Appeals upheld paragraph two of the above statute against a constitutional due process and equal protection attack. We note the Fourteenth Amendment argument is currently pending before the United States Supreme Court in *Lalli v. Lalli,* No. 77-1115 (N.Y. Ct. App., filed February 8, 1978). The *Lathrop* opinion warned that the natural father's rights to notice and opportunity to be heard must always be recognized.

Thus, whether a father has legitimized his child is irrelevant to his right to notice and to custody under the laws of our state. However, as legitimation will determine whether the child can be adopted without the father's consent, the legitimation process must be examined.

Several different methods of legitimation currently exist in Kansas. These include marriage to the mother and acknowledgment of the child pursuant to K.S.A. 23-125; adoption pursuant to K.S.A. 59-2103; and formal paternity proceedings. Paternity proceedings may be either an action brought for the benefit of the mother under K.S.A. 38-1101, *et seq.,* or an action brought in the name of the child as recognized in *Doughty v. Engler,* 112 Kan. 583, 211 Pac. 619, 30 A.L.R. 1065 (1923).

Clearly in the instant case the father did not comply with any of the above methods of legitimation. The Seamons argue, however, the father is still a parent for purposes of adoption under K.S.A. 59-2102(3) because he acknowledged the children as his own in court and notoriously to the general public by assuming the responsibility for the children. For the purposes of inheritance under both our statutory law, K.S.A. 59-501, and our case law, *In re Estate of Case,* 180 Kan. 53, 299 P.2d 589 (1956), this type of acknowledgment will suffice.

A review of the law in this area reveals no case which is directly in point. Research indicates distinctions between parents for purposes of consent to adoption of the illegitimate child are increasingly disregarded by other jurisdictions. The following

states allow the father of an illegitimate child to consent to adoption:

1. Arizona: Ariz. Rev. Stat. Ann. § 8-106 (1978 Supp.).
2. Arkansas: Ark. Stat. Ann. § 56-206 (1977 Supp.) (Revised Uniform Act).
3. California: Cal. Civ. Code § 224 (West) (if presumed father).
4. Delaware: Del. Code Ann. tit. 13, § 908 (1977 Supp.).
5. Georgia: Ga. Code Ann. § 74-403 (1978 Supp.).
6. Illinois: Ill. Ann. Stat. ch. 4, § 9.1-8 (Smith-Hurd).
7. Indiana: Ind. Code Ann. § 31-3-1-6 (Burns 1978 Supp.) (effective October 1, 1979).
8. Iowa: Iowa Code Ann. § 600.7 (West 1978 Supp.) (guardian).
9. Maine: Me. Rev. Stat. tit. 19, § 532-C (1978 Supp.).
10. Michigan: Mich. Stat. Ann. § 27.3178 (555.31) (1978 Supp.).
11. Minnesota: Minn. Stat. Ann. § 259.24 (West 1977 Supp.).
12. Montana: Mont. Rev. Codes Ann. § 61-205 (1977 Supp.) (Revised Uniform Act).
13. New Hampshire: N.H. Rev. Stat. Ann. § 170-B:5 (after notice, claims father).
14. New Jersey: N.J. Stat. Ann. § 9:3-39, 9:3-45 (West 1978 Supp.).
15. New Mexico: N.M. Stat. Ann. § 22-2-25 (1975 Supp.) (Revised Uniform Act).
16. North Dakota: N.D. Cent. Code § 14-15-05 (Revised Uniform Act).
17. Ohio: Ohio Rev. Code Ann. § 3107.06 (Page 1977 Supp.).
18. Oregon: Or. Rev. Stat. § 109.312.
19. Rhode Island: R.I. Gen. Laws § 15-7-10 (1977 Supp.).
20. South Dakota: S.D. Codified Laws Ann. § 25-6-4.
21. Texas: Tex. Fam. Code Ann. tit. 2, § 16.03 (Vernon).
22. Utah: Utah Code Ann. § 78-30-4.
23. Virginia: Va. Code § 63.1-225 (1978 Supp.).
24. Washington: Wash. Rev. Code Ann. § 26.32.030.
25. West Virginia: W.Va. Code § 48-4-1 (1978 Supp.).
26. Wisconsin: Wis. Stat. Ann. § 48.84 (West 1978 Supp.).
27. Wyoming: Wyo. Stat. § 1-22-109.

The following states allow consent by the father upon the further qualification that paternity has been established, or the child legitimized, or the duties of a parent have been exercised:

1. Alabama: Ala. Code tit. 26, § 10-3.
2. Alaska: Alaska Stat. § 20-15.040.
3. Colorado: Colo. Rev. Stat. § 19-4-107.
4. Florida: Fla. Stat. Ann. § 63.062 (West 1977 Supp.).
5. Hawaii: Haw. Rev. Stat. § 578-2.
6. Kentucky: Ky. Rev. Stat. § 199.500 (1978 Supp.).
7. Maryland: Md. Ann. Code art. 16, § 74.
8. Nebraska: Neb. Rev. Stat. § 43-104.
9. Nevada: Nev. Rev. Stat. § 127.040.
10. North Carolina: N.C. Gen. Stat. § 48-6 (1977 Supp.).
11. South Carolina: S.C. Code § 15-45-70 (1977 Supp.).
12. Vermont: Vt. Stat. Ann. tit. 15, § 435 (1978 Supp.).

Finally, the remaining minority of states do not allow the father of an illegitimate child to consent to adoption:

1. Connecticut: Conn. Gen. Stat. § 45-61d (Rev. 1977) (gets notice).
2. Idaho: Idaho Code § 16-1504 (1978 Supp.).
3. Kansas: K.S.A. 59-2102 (notice by case law).
4. Louisiana: La. Rev. Stat. Ann. §§ 9:422.0, 9:422.1 (West).
5. Massachusetts: Mass. Ann. Laws ch. 210, § 2 (Michie/Law Co-op 1978 Supp.) (gets notice).
6. Mississippi: Miss. Code Ann. § 93-17-5.
7. Missouri: Mo. Ann. Stat. § 453-030 (Vernon).
8. New York: N.Y. Dom. Rel. Law § 111 (McKinney) (gets notice).
9. Oklahoma: Okla. Stat. Ann. tit. 10, § 60.5 (West 1978 Supp.).
10. Pennsylvania: Pa. Stat. Ann. tit. 1, § 411 (Purdon) (1978 Supp.).
11. Tennessee: Tenn. Code Ann. § 36-111 (gets notice).

Moreover, the Supreme Court decisions of *Stanley v. Illinois,* 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208 (1972) and *Quilloin v. Walcott,* 434 U.S. 246, 54 L.Ed.2d 511, 98 S.Ct. 549 (1978), indicate that courts should consider the nature and extent of the natural father's contacts with his children in the area of adoption of illegitimates.

In *In re Adoption of B. by E. and R.,* 152 N.J. Super 546, 378 A.2d 90 (1977), the New Jersey court refused to apply an adoption statute, since amended, which specifically excluded the father of an illegitimate child from the definition of "parent." The court held the maternal grandparents' petition for adoption could not be granted in the absence of consent by the natural father who had not forsaken his parental obligations toward the child. See also Annot., 51 A.L.R.2d 497, 504 (1957).

We emphasize in the instant case that we are asked only to determine whether the father of an illegitimate child can give his consent to adoption under K.S.A. 59-2102(3). Here a simple reading of the Kansas statutory provision indicates paragraph three does not differentiate between legitimate and illegitimate children. The unadjudicated natural father, William Thompson, notoriously recognized his paternity not only by taking his children in; acknowledging them as his own; giving them parental support; and finding them a home with his sister and her husband, but also by recognizing them in writing when he consented to the adoption petition. The trial court found for purposes of the adoption William Thompson was the natural father of the children and could give his consent. It should not be a prerequisite,

in a situation such as we have in this case, that the father first be adjudicated the natural father in separate proceedings. When the question arises whether or not the mother has abandoned her illegitimate children, and the father has notoriously and in writing acknowledged his paternity before the court, he should be allowed to consent to their adoption. Such a holding places no limitation on the due process notice requirements to the parent who is alleged to have abandoned the child.

Therefore, we conclude the Court of Appeals erred in holding the father of an illegitimate child must be adjudicated the natural father, in proper proceedings, before he can execute a valid consent to the adoption pursuant to K.S.A. 59-2102(3). In view of our holding the Seamons' third point on appeal need not be discussed because immediate custody of the children should be granted to David and Marjorie Seamon.

The judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.